CAUSLEY v LaFRENIERE

1. Parent and Child—Statutes—Child Support—Unemployment Compensation—ADC-U Benefits.

Statutes which prohibit the alienation of unemployment compensation and ADC-U benefits by any assignment, sale, garnishment, execution, or otherwise prohibit only the alienation of benefits and do not preclude an order for future payment of child support from future wages; therefore a conflict between a child support order and the statutes exists only if a defendant is ordered to make support payments from such benefits (MCLA 400.63, 421.30; MSA 16.463, 17.532).

2. Parent and Child—Child Support—Modification of Support Order—Ability to Pay.

A court considering modification of a child support order must take into account, among other factors, the father's ability to pay; a support order which reduced an unemployed father's support payments from $10 per week to $5 per month for the duration of his unemployment more than adequately reflects the father's changed economic circumstances.

3. Appeal and Error—Parent and Child—Child Support—De Novo Review—Presumption of Validity.

Review by the Court of Appeals of a trial court's determination in a child support matter is not *de novo* despite the fact that child support hearings are historically equitable in nature; rather, the lower court's decision bears a presumption of validity and an appellant bears a correspondingly heavy burden of showing the decision to be clearly erroneous.

Appeal from Chippewa, William F. Hood, J. Submitted May 3, 1977, at Marquette. (Docket No. 28866.) Decided September 8, 1977.

References for Points in Headnotes
[1] 59 Am Jur 2d, Parent and Child §§ 61, 65.
[2] 59 Am Jur 2d, Parent and Child § 56.
[3] 5 Am Jur 2d, Appeal and Error § 868.

Complaint by Ann C. Causley against Louis J. LaFreniere for an order of filiation under the paternity act. Order of filiation entered by stipulation and defendant ordered to pay child support. A subsequent order was entered for the defendant to make minimal child support payments while he was unemployed with the remainder accruing for later payment. Defendant appeals. Affirmed.

*Upper Peninsula Legal Services, Inc.* (by *James Jannetta),* for defendant on appeal.

Before: R. M. MAHER, P. J., and M. F. CAVANAGH and D. F. WALSH, JJ.

PER CURIAM. Defendant appeared before the lower court on a motion to show cause why he should not be held in contempt for failure to make child support payments of $10 per week. MCLA 552.201; MSA 25.161. Defendant's unemployment persuaded the court that he should not be held in contempt. However, the court refused to release defendant from liability for overdue payments, and ordered that defendant's arrearage would continue to accrue at the rate of $10 per week for the duration of his unemployment. As long as he remained unemployed, defendant was to pay $5 per month for child support. Upon again finding employment, defendant was to resume payments of $10 per week, and was to pay an additional $5 per week to be applied to his accumulated arrearage. Defendant appeals from this order.

Defendant's liability for support originated with a stipulation of paternity and an agreement to make support payments of $10 per week. An order of filiation to this effect was entered on February 11, 1975. At that time defendant was employed as a construction worker, with a net income of $190

per week. Defendant was married, and had two children of the marriage.

Defendant made support payments through March, 1975. On March 28th of that year defendant was laid off. Thereafter he made no support payments. From March of 1975, until March of 1976, defendant received unemployment compensation in the amount of $113 per week. When those benefits expired defendant began receiving ADC-U of $219 twice a month. He was receiving ADC-U at the time of the hearing, on April 22nd, 1976. At that time the accumulated support arrearage was $605.50.

I

Defendant first contends that the court's order allowing the arrearage of $10 per week to accumulate and compelling him to pay $5 per month is in conflict with statutes prohibiting the alienation of unemployment compensation and ADC-U benefits, "by any assignment, sale, garnishment, execution or otherwise". MCLA 421.30; MSA 17.532, MCLA 400.63; MSA 16.463.

By their terms the statutes prohibit only alienation of benefits. They do not preclude an order for future payment of child support from future wages. The court's order did not require the arrearages to be paid until defendant was again employed. Therefore, as to the arrearages, there was no conflict between the court's order and the statutes.

That part of the order requiring defendant to pay $5 per month until he found employment was prospective only, and was given at a time when defendant's right to unemployment compensation had expired. Our concern is therefore only with an

alleged conflict between this order and defendant's right to inalienable ADC-U benefits. As our previous construction of this statute indicates, this conflict exists only if defendant is forced to make payments for child support from ADC-U benefits. If defendant has other income which could be turned to this purpose, then there is no conflict between the court's order and the inalienability statute.

Here, however, the record does not reflect that defendant had such other source of income. Nonetheless, defendant had twenty-odd work days available each month in which to seek whatever employment would be necessary to earn $5.[1] Only if

---

[1] Indeed, our research indicates that defendant might find such employment without risking loss of ADC-U benefits, in whole or in part. Eligibility for those benefits requires, *inter alia,* that the father be unemployed, 42 USCA § 607(b)(1)(A); MCLA 400.56d; MSA 16.456(4), and that the dependent child be needy, *i.e.,* without an income sufficient to provide "a minimum subsistence compatible with decency and health". 42 USCA § 607(a); MCLA 400.56d; MSA 16.456(4), MCLA 400.56g(1)(b); MSA 16.456(7)(1)(b).

However, under 45 CFR § 233.100(a)(1)(i), an unemployed father is defined as one working less than 100 hours per month. This express and presumably controlling definition notwithstanding, the Michigan Legislature has imposed the additional requirement that the father not be employed for more than 64 hours in any consecutive two week period. MCLA 400.56d; MSA 16.456(4). Though the two provisions' inconsistency is interesting, they manifestly allow defendant herein ample opportunity to earn the $5 per month without hazarding "employment", under either the Federal or the state definition.

Defendant's other concern might be that such earnings would result in a reevaluation of his dependents' need and thus in a reduction or termination of ADC-U benefits without a corresponding increase in spendable income. This fear would appear groundless. By administrative regulation, the Michigan Department of Social Services has expressly adopted the Federal laws and regulations regarding what income is to be considered in determining an individual's need. 1970–1971 AACS, R 400.12(24). The Federal regulations in turn provide that:

"[N]et income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." 45 CFR § 233.20(a)(3)(ii)(D).

This regulation would seem to exclude from the computation of

this were found to be impossible, and defendant were found to be in contempt for refusing to pay the $5 in child support from funds identified as ADC-U benefits, would this Court be presented with the conflict which is said to arise here. It need not be resolved on the facts of this case.

## II

Defendant next asserts that the trial court abused its discretion by not cancelling and forbidding the further accumulation of any arrearage in support payments, and by ordering him to make support payments while he was receiving ADC-U benefits.[2] Defendant argues, and we agree, that a

defendant's available income any earnings which defendant is under court order to pay for child support. It would seem to follow that eligibility for ADC-U benefits would be unaffected by such earnings.

This Court is advised that, as a matter of "Departmental Policy", the Department of Social Services disregards, in the computation of an individual's available income, an amount equal to any court ordered payments for child support:

"When a recipient or applicant is under a court order for child support, and is making payments as directed by the court order for a child not in the eligible group, such amounts are not considered available income. In such cases, the amount of child support being paid by the recipient is deducted from the amount determined as his net income. This policy is applicable only for court orders for child support, but may be deducted from any type of income received by the person under the court order." Assistance Payments Manual, item 330, p 9.

However, because the Department of Social Services has not complied with the requirements of the Administrative Procedures Act of 1969, this "Departmental Policy" is without the force of law. See MCLA 24.241; MSA 3.560(141), MCLA 24.242; MSA 3.560(142), MCLA 24.243; MSA 3.560(143), MCLA 24.246; MSA 3.560(146).

[2] Defendant invites this Court to substitute its judgment for that of the lower court, and cites cases which state or imply that review here is de novo. See, e.g., Prettyman v Prettyman, 348 Mich 206, 211–212; 82 NW2d 475, 478 (1957), Cullimore v Laureto, 66 Mich App 463, 465; 239 NW2d 409, 410 (1976). It must be conceded that the de novo review which we are said to undertake seems inconsistent with the discretion said to be vested in the trial court. See Polley v Polley, 367 Mich 455, 457; 116 NW2d 924, 925 (1962), Spalding v Spalding, 355 Mich 382, 384; 94 NW2d 810, 811 (1959), Hagbloom v Hagbloom, 71 Mich App 257, 259; 247 NW2d 373, 374 (1976). See also MCLA 722.28; MSA 25.312(8).

court considering modification of a support order must take into account, among other factors, the father's ability to pay. See *McCarthy v McCarthy,* 74 Mich App 105, 109; 253 NW2d 672, 674 (1977). Defendant further argues that when he lost his job and began receiving, first unemployment compensation, and then ADC-U benefits, he experienced a reduction in income which mandated a reduction in his required weekly payment. Finally, he argues that receipt of ADC-U benefits is prima facie evidence of his inability to make support payments. For the foregoing reasons defendant contends that the court's order did not reflect what it had to, defendant's incontrovertibly diminished ability to pay.

Defendant's argument misconstrues the court's order. Before the hearing in the instant case defendant was required, under penalty of contempt, to make weekly payments of $10 in child support. The court's order reduced defendant's obligation for current payments to $5 per month for the duration of his unemployment. We find that this more than adequately reflected defendant's

---

The cases stress that "great weight is to be given to the trial judge's findings of fact", *McCarthy v McCarthy,* 74 Mich App 105, 108–109; 253 NW2d 672, 674 (1977), and that the trial judge will not be reversed unless the abuse of discretion is "clear". *Hagbloom v Hagbloom, supra,* at 259; 247 NW2d at 374. We interpret this language as expressing a reluctance to displace the determination of a judge with immediate knowledge of the case. *See Spalding v Spalding, supra,* at 384; 94 NW2d at 811. It indicates that we do not, strictly speaking, hear this cause *de novo.* Rather, the lower court's decision bears some presumption of validity, and appellant bears a correspondingly heavy burden of showing that decision to be "clearly erroneous". See *Cullimore v Laureto, supra,* at 465; 239 NW2d at 410.

At the same time, we note that child support hearings are, historically, equitable in nature, and we are cognizant of the history of appellate review in equity cases, and the frequent references to *de novo* review found in those cases. *See e.g., Oliver v Baldwin,* 201 Mich 336, 360–361; 167 NW 910, 918 (1918). We conclude that their effect is to circumscribe the lower court's discretion, so that it is narrower in this than in some other areas of decision, and yet not wholly overridden by the reviewing court.

changed economic circumstances. See *Baird v Baird,* 368 Mich 536, 541; 118 NW2d 427, 429 (1962), *Cymbal v Cymbal,* 43 Mich App 566, 567; 204 NW2d 235, 236 (1972).

In the following terms the court clarified for defendant the reason for the order entered:

"Mr. LaFreniere, you have this continuing obligation just as much to support this child as the children that are at home with you. And I don't think it is appropriate that you entirely forget it despite the fact that your income is less."

We find no abuse of discretion.

Affirmed. No costs.