## MONCADA v MONCADA

1. APPEAL AND ERROR—EQUITY—PARENT AND CHILD—CHILD SUPPORT ORDERS—PRESUMPTION OF VALIDITY—CLEAR ERROR.

   The standard of review on appeals from orders for child support provides that the lower court's decision is to be presumed correct and that the appellant bears the burden of showing the decision to be clearly erroneous; however, because of the history of appellate review in equity, the appellant may establish clear error more readily in an equity case than in cases historically heard at law.

2. APPEAL AND ERROR—CLEAR ERROR—EVIDENCE—PARENT AND CHILD —LAWS OF EMPLOYMENT—AMBIGUOUS EVIDENCE.

   Clear error by a lower court in finding that a petitioner's act in leaving the site of his employment rendered him responsible, at least in part, for the loss of his employment was not shown on the evidence admitted at trial where the evidence regarding the loss of his job was ambiguous and the record was silent on the questions of whether petitioner ever returned to the work site, under what circumstances he was informed that he had lost his job, and whether he made any effort to regain it.

3. DIVORCE—PARENT AND CHILD—CHILD SUPPORT MODIFICATION—FATHER'S INCOME—REDUCTION—UNEXERCISED ABILITY TO EARN.

   The father's income is one of the factors to which a court must look when entertaining a petition for modification of child support payments provided for in a judgment of divorce; in some cases a reduction in the father's income would compel a modification; however, the father's duty to pay support is not limited by his income and the court may also look to his unexercised ability to earn.

4. DIVORCE—PARENT AND CHILD—CHILD SUPPORT—MODIFICATION—FATHER'S INCOME—VOLUNTARY REDUCTIONS—BAD FAITH—UNCONSCIONABLE DISREGARD FOR WELFARE.

   Voluntary reductions in a father's income will not warrant a

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 704.
[2] 5 Am Jur 2d, Appeal and Error § 844.
[3] 24 Am Jur 2d, Divorce and Separation § 844 *et seq.*
[4, 5] 24 Am Jur 2d, Divorce and Separation § 848.

modification of child support payments provided for in a judgment of divorce where the reduction was made in bad faith or where the father voluntarily worsens his financial position through unconscionable disregard for the welfare of his dependents.

5. Divorce—Parent and Child—Child Support Modification—Father's Income—Voluntary Reduction—Bad Faith—Wilful Disregard of Interests.

A father's voluntary reduction in income is not an adequate reason for a trial court's refusal to modify a child support order where bad faith or a wilful disregard for the interests of the dependent children by the father are absent.

Appeal from Eaton, Richard Robinson, J. Submitted June 13, 1977, at Grand Rapids. (Docket No. 30461.) Decided January 24, 1978.

Complaint by Jean Moncada against Joe Moncada for divorce. Divorce granted. Defendant subsequently petitioned for a reduction in his weekly child support payments. The court ordered his obligation for current payments reduced and further ordered that the difference between the former and the revised payments would continue to accrue for the duration of defendant's unemployment. Defendant appeals. Reversed and remanded.

Greater Lansing Legal Aid Bureau, Inc. (by *Philip E. Hodgman* and *Chris Campbell*), for defendant.

Before: M. J. Kelly, P. J., and M. F. Cavanagh and J. R. Rood,* JJ.

Per Curiam. Petitioner was brought before the lower court on a motion to show cause why he should not be held in contempt for failure to make

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

weekly child support payments of $133. Mr. Moncada was without work at the time, and was receiving unemployment compensation of $136 per week. He petitioned the lower court to reduce his weekly payments to a level commensurate with his income. The court ordered that his obligation for current payments be reduced to $105 per week, but that a further $28 per week (the difference between the former and the revised payments) would continue to accrue for the duration of his unemployment. From this order petitioner appeals as of right.

Petitioner had previously been employed as a construction worker with a gross income of $338 per week. It was on the basis of this income that his support payments had been set at $133 weekly. Petitioner lost this job, and the circumstances under which he did so define the issues herein raised.

Petitioner testified that he reported to work as usual at 8 a.m. on a Monday morning. He worked until noon, when a piece of machinery broke and everyone was sent home. He reported back to work the next morning, but by 11:30 the machinery still hadn't been repaired. Petitioner, who had work to do at home and was not being paid for his time at the job site, thought that the equipment might not be repaired that day, and asked his employer if he could leave. His employer expressed indifference, and petitioner went home.

At the time of the hearing on his petition to modify support, petitioner still hadn't returned to work. A letter from the treasurer of the company was read into evidence. According to this letter, petitioner had voluntarily walked off the construction site, which act the company regarded as self-termination of employment. However, this letter

was contradicted by a subsequent letter from the president of the company, who stated that petitioner had been temporarily laid off from work, and would be put back on the payroll at a later date. This version of events was corroborated by petitioner's testimony that he began receiving unemployment compensation immediately after termination of his employment. See MCLA 421.29(1)(a); MSA 17.531(1)(a).

Petitioner testified that after losing his construction job he had worked part-time picking pickles, and had applied part of his $150 to $200 of earnings from this work to the payment of child support. Petitioner further testified that he was seeking work through friends and through cooperation with the Michigan Employment Security Commission.

At the conclusion of the hearing the trial court announced its order, and, addressing petitioner, stated:

"I figure your unemployment problems are self-generated, and you are responsible for them, or at least you contributed to it."

The central questions on this appeal are whether the foregoing evidence was sufficient to establish that petitioner contributed to his own decrease in income and, if so, whether this was a legally sufficient ground for refusing him the relief he sought.

In *Causley v LaFreniere,* 78 Mich App 250, 254–255, n 2; 259 NW2d 445 (1977), this Court addressed the apparent conflict in the authorities regarding the standard of review on appeals from orders for child support. As we explained in *Causley,* the lower court's decision is presumed correct,

and the appellant bears the burden of showing that decision to be clearly erroneous. However, because of the history of appellate review in equity, the appellant may establish clear error here more readily than in cases historically heard at law.

The evidence in the instant case regarding petitioner's loss of his job is ambiguous. The record is silent on the question of whether petitioner ever returned to the work site, under what circumstances he was informed that he had in fact lost his job, and whether he made any effort to regain it. However, on the evidence admitted, we cannot say that the lower court clearly erred in finding that petitioner's act in leaving the work site rendered him responsible, at least in part, for the loss of his employment. The question then becomes whether this is good cause for denying a reduction in child support.

The father's income is one of the factors to which a court must look when entertaining a petition for modification of child support. *McCarthy v McCarthy,* 74 Mich App 105, 109; 253 NW2d 672, 674 (1977). Indeed, this Court has speculated that "in some cases a reduction in income would compel a modification". See *Cymbal v Cymbal,* 43 Mich App 566, 568; 204 NW2d 235, 236 (1972). However, the father's duty to pay support is not limited by his income; the court may also look to the father's unexercised ability to earn. *Travis v Travis,* 19 Mich App 128, 130; 172 NW2d 491, 492 (1969). See also *Baird v Baird,* 368 Mich 536, 541; 118 NW2d 427, 429 (1962).

Although we have found no Michigan cases directly on point,[1] there is well-reasoned authority

---

[1] In the related but arguably distinguishable area of contempt proceedings to enforce support orders there is precedent from this

for the rule that voluntary reductions in income, *if made in bad faith,* will not warrant a modification of support payments. *Nelson v Nelson,* 225 Or 257; 357 P2d 536 (1960).[2] See also 89 ALR2d 7, 54–58, Anno: *Change in financial condition or needs of parents or children as ground for modification of decree for child support payments.* We also believe that no modification is warranted where the father voluntarily worsens his financial position through unconscionable disregard for the welfare of his dependents. *Cf. Cullimore v Laureto* and *Sword v Sword,* in footnote 1, *supra.* However, absent bad faith or willful disregard for the interests of the dependent children, a voluntary reduction of income is not an adequate reason for refusing modification of a support order.

In this case the lower court denied petitioner an adequate adjustment of support obligations solely

Court and the Supreme Court for viewing unrealized earning capacity in light of the father's state of mind. In *Cullimore v Laureto,* 66 Mich App 463; 239 NW2d 409 (1976), the Court reviewed a trial court order holding the defendant in contempt for failure to make support payments. MCLA 552.201; MSA 25.161. The trial judge had "found the defendant to be a recalcitrant, whether conscious or merely unconcerned". 66 Mich App at 465; 239 NW2d at 410. In affirming, the Court stated:

"The record amply supports a conclusion that this defendant comfortably accepts his unemployed status. Given the defendant's seven-year record of nonpayment and his self-proclaimed ability as a mechanic, it is difficult to dispute the judge's finding that he was able but unwilling to assume his support obligations." 66 Mich App at 466; 239 NW2d at 410.

The same issue was before the Michigan Supreme Court in *Sword v Sword,* 399 Mich 367, 379; 249 NW2d 88, 92 (1976), wherein the Court stated:

"If the judge concludes from the testimony of defendant and others that defendant has 'sufficient ability to comply with' the order or 'by the exercise of due diligence could be of sufficient ability, and has neglected or refused' to comply, defendant may be found in contempt of court."

[2] *Nelson* defined bad faith as follows:

"To find bad faith it would be necessary to show that defendant acted with a purpose of jeopardizing the interests of his children." 225 Or at 261; 357 P2d at 538.

because he had "at least * * * contributed" to his own unemployment problems. There was no finding, nor any evidence to support a finding, that petitioner had acted in bad faith or willful disregard of his children's needs. Accordingly, the lower court's order was clear error. The case is reversed and remanded for further consideration of Mr. Moncada's petition in light of the views expressed herein. No costs.

M. J. KELLY, P. J., concurs in the result only.