**In re Gerald Dwight JENKINS and Suzanne A. Jenkins, Debtors.**

**Bankruptcy No. HK 84 02699.**

United States Bankruptcy Court, W.D. Michigan.

Feb. 7, 1986.

Edward Read Barton, Allegan, Mich., for the debtors.

Catherine M. Fleming, Asst. Atty. Gen., Detroit, Mich., for the Michigan Employment Sec. Comm'n.

Joseph A. Chrystler, Kalamazoo, Mich., Trustee.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

ENFORCEMENT OF 11 U.S.C. § 1325(c) UNDER THE SUPREMACY CLAUSE OF THE UNITED STATES' CONSTITUTION

The debtors, Gerald and Suzanne Jenkins, have brought this motion to compel the Michigan Employment Security Commission (MESC) to pay over a portion of their unemployment benefits directly to the Chapter 13 Trustee, Mr. Joseph Chrystler. The MESC has opposed this motion arguing that such payments are contrary to valid state and federal laws.

This Court confirmed the Jenkinses' Chapter 13 plan on February 5, 1985. Subsequently, Gerald Jenkins was laid off. He applied to the MESC for unemployment benefits, which he has received. On November 15, 1985, the Jenkinses by their attorney, Edward R. Barton, filed this motion to compel direct payments from the MESC to the Chapter 13 Trustee. The amount to be directly paid is $20.00 per week of whatever benefits the debtors are entitled to.

In praying for this order the debtors relied upon 11 U.S.C. § 1325(c) which provides that:

[a]fter confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.

At 11 U.S.C. § 101(14) the Code defines "entity" as including governmental units. However, Michigan law provides at M.S.A. § 17.532 [M.C.L.A. § 421.30], in part, that:

[a]ll rights to benefits shall be absolutely inalienable by any assignment, sale, garnishment, execution or otherwise, and, in case of bankruptcy, the benefits shall not pass to or through any trustees or other persons acting on behalf of creditors.

In determining whether these statutes conflict and in resolving any conflict, this court is guided by *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The *Perez* case established a two step process: ascertain the purpose of each statute and then determine whether the state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Perez*, at 649, 91 S.Ct. at 1711, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 851 (1941).

■ The purpose of § 17.532 [M.C.L.A. § 421.30] is very clear from its face: it prohibits any payment of unemployment benefits unless made directly to the beneficiary. The beneficiary himself may not alienate his own benefits. Indeed, the Michigan Court of Appeals has held that the statute prohibits alienation of benefits. *Causley v. LaFreniere*, 78 Mich.App. 250, 254, 259 N.W.2d 445 (1977). As to the purpose of § 1325(c) according to Collier's, it is to clarify that all of the debtor's income from any source, except payments under Titles II and XVI of the Social Security Act, are property of the estate and under the exclusive jurisdiction of the bankruptcy court. 5 Colliers on Bankruptcy, ¶ 1325.01[4] at pp. 1325–50 & 1325–54 (1985).

■ Having determined the respective purposes, the Court must next determine whether those purposes conflict. The State of Michigan argues that they do not for two reasons. The State first argues that the Code itself at § 522 allows a state to determine whether or not unemployment benefits may be alienated. At § 522(b)(1) and (d) the Code permits a debtor to exempt, *inter alia*, unemployment benefits, unless the state does not permit exemption. Section 522(b)(2) permits the debtor to alternatively exempt any property that is exempt under Federal law, other than subsection (d) of this section (which section includes unemployment benefits), or under applicable state or local law. The State is

correct as to these exemption provisions, but misstates their meaning. Under them, a state may prohibit a debtor from exempting his unemployment benefits, but a state may not compel the debtor to exempt them. That is, a state may limit a debtor's choices by prohibiting him from exempting his unemployment benefits, but nowhere does Congress say a state may limit a debtor's choices by prohibiting him from assigning those benefits to a Chapter 13 trustee. If the state has not declared those benefits per se non-exempt, the decision of whether to exempt them or not rests, under § 522, with the debtor, not the state. Therefore, the state and federal statutes would still appear to be in conflict.

The state has a fallback argument, which is that in passing § 17.532 [M.C.L.A. § 421.30] it was merely acting in conformance with two federal statutes, the Social Security Act and the Federal Unemployment Tax Act (FUTA). Therefore, if there is any conflict, it is, according to the state, not between Michigan state law and the federal Bankruptcy Code, but between the Code and these two federal statutes.

█ The Court, however, does not believe there is any such conflict, and if there were, it would be resolved in favor of the Bankruptcy Code. The Congress knew how to explicitly exempt payments under the Social Security Act's Title II (disability benefits, 42 U.S.C. §§ 401–433) and under Title XVI (supplemental security income benefits, 42 U.S.C. §§ 1381–1383) from the provisions of the Bankruptcy Code and did so. *Buren v. Hildebrand (In re Buren)* 725 F.2d 1080 (6th Cir.1984). The Congress has not done so for unemployment benefits. True, certain portions of the Social Security Act (§ 303(a)(1) and (a)(5)) and the Federal Unemployment Tax Act (§ 3304(a)(4)) might, if very broadly read, be taken as implying assignments to Chapter 13 trustees were not favored. Such an interpretation might be consistent with certain passages in dicta in *California Department of Human Resources Development v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1970), which indicated that

unemployment benefits were to be paid as quickly as administratively possible to the beneficiaries, and that those benefits are intended to provide subsistence to the beneficiary during his time of unemployment, to give the beneficiary some current purchasing power, and to allow the beneficiary to devote his full time to finding work. However, these are ambiguous and broad statements, not explicit statutes in clear contradiction of the Bankruptcy Code. Where a court can avoid conflicting interpretations of federal statutes it should do so. Further, even if these statutes do conflict with the Bankruptcy Code, the Court believes the Code would prevail. In *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) the Supreme Court was faced with two conflicting federal statutes, the National Labor Relations Act's prohibition of unilateral abrogation of a collective bargaining agreement, and the Code provisions allowing a debtor to reject an executory contract. The Supreme Court struck a balance between the two, holding that the Code must prevail in order to give a debtor the freedom and flexibility to reorganize. Shortly thereafter the Congress readjusted that balance by passing a specific Code provision, § 1113, which covers this situation, but it must be noted that the Congress did not go so far as to require debtors to adhere to the exact procedures set forth in the N.L.R.A.

The Court concludes that there is no conflict between FUTA and the Code, or if there is one the Code would prevail because a debtor once shielded behind the automatic stay will be able to freely choose whether to ask for a pay order. Further, the volume of Chapter 13 filings is not so great as to compromise the economic goals of FUTA, nor will debtors be forced to give up all subsistence in order to fund a plan. Lastly, to hold that unemployment benefits may not be turned over directly to a trustee might be to hamper certain debtors from filing or adhering to a Chapter 13 plan, a direct contradiction of Congress's desire to broaden the class of persons who may file under Chapter 13. H.R.Rep. No. 95–595,

95th Cong., 1st Sess. 311–12, 1978 U.S. CODE CONG. & AD.NEWS at 5787, 6269; See also, *In re Buren,* 725 F.2d at 1081–1083.

Since the Court concludes that federal law does not require Michigan to prohibit payments of unemployment benefits directly to a Chapter 13 trustee, we are left with a direct conflict between state and federal law. Under the Supremacy Clause of the United States Constitution, Art. VI, cl. 2, and under *Perez v. Campbell,* supra, this Court must hold that § 1325 of the Bankruptcy Code prevails over M.S.A. § 17.532 [M.C.L.A. § 421.30] and the MESC must comply with an order of this Court directing it to make payments directly to the Chapter 13 trustee.