**COCKRELL, f.k.a. Stright**

v.

**STRIGHT.** █

2003-Ohio-2757.]

Court of Common Pleas of Ohio,
Ross County.

No. 98 DR 185.

Decided April 22, 2003.

Alfred E. Baerkircher, for plaintiff.

James E. Barrington, for defendant.

NICHOLAS H. HOLMES JR., Judge.

{¶ 1} The following findings and recommendations of the magistrate are hereby approved and adopted by this court.

Judgment accordingly.

## APPENDIX

JOHN C. DiCESARE, Magistrate.

{¶ 2} This cause came on for hearing on the June 17, 2002 motion and January 28, 2003 motions filed by the plaintiff, Bridget L. Cockrell, and the November 27, 2002 and January 30, 2003 motions filed by the defendant, Roger M. Stright. Plaintiff was present and represented by her counsel, Alfred E. Baerkircher. Defendant was present and represented by his counsel, James E. Barrington.

{¶ 3} The magistrate finds:

{¶ 4} On January 7, 2003, defendant's child-support obligation was temporarily reduced to $58.22 per week per child pending final hearing on same. Prior to this temporary modification, defendant's child-support obligation was $97.82 per week per child.

{¶ 5} Defendant commenced his present employment with AMCO as an apartment manager on November 21, 2002. His present annual salary is $30,000.

{¶ 6} Defendant had formerly been an employee of Kroger's since 1968. Defendant's last employment with Kroger's was as a store manager with a base salary of $48,000. Defendant was terminated from Kroger's on November 19, 2002. Defendant went into training as a manager in 1978. His total income including base salary and bonuses was $54,974 in 2002 and $56,307 in 2001.

{¶ 7} Defendant was terminated from Kroger's because he refused to work on Sundays. Defendant's refusal to work on Sundays is based on his religious beliefs that one should not work on the Sabbath.

**74**

{¶ 8} Kroger's attempted to accommodate defendant's beliefs by having other managers fill in for him on Sunday. On the first occasion that defendant attempted to find a replacement, he could not. Defendant then no longer considered this an option.

{¶ 9} Defendant began attending church in June 1997. From 1998 to 2002, defendant attended People's Faith Chapel in Circleville, Ohio. For the past two years, defendant debated in his mind whether it was appropriate to work on Sundays.

{¶ 10} Defendant left People's Faith Chapel to join Bremen's Holiness Church. At Bremen's, the observance of the Sabbath was stressed. Defendant is no longer a member of Bremen's Holiness Church.

{¶ 11} Defendant's belief not to work on the Sabbath is rooted in American Christian Law.

{¶ 12} After defendant's termination from Kroger's, defendant still received his monthly Kroger's salary through February 2003. Defendant has not decided whether he will challenge his discharge. He has 300 days from his termination to do so.

{¶ 13} Defendant's health concerns were not shown to be a contributing factor preventing defendant from continuing his employment with Kroger's.

{¶ 14} Defendant received $2,915.73 in oil-well royalties in 2002.

{¶ 15} Defendant's present wife, Ruby, had to quit her most recent employment due to health concerns. For the past 25 years, she rarely worked outside the home.

{¶ 16} Plaintiff was last employed at PPG from March 21, 2003, to March 26, 2003. She had to quit because she was physically unable to do the work. She was earning $7.50 per hour.

{¶ 17} Plaintiff was recently employed at Sports Plus from October 2001 to July 2002. She earned $5.15 per hour working part-time. Plaintiff quit Sports Plus to take care of her mother-in-law, who required home dialysis and insulin shots. Plaintiff's mother-in-law passed away on March 13, 2003. Plaintiff is currently seeking work.

{¶ 18} Plaintiff was employed with Dr. Helmsworth from 1993 through 1998. She was earning $9.50 per hour. She voluntarily quit when she received her divorce settlement and moved in with her boyfriend. It was also her boyfriend's desire that she not work.

{¶ 19} Defendant claimed the children as exemptions for tax year 2002.

{¶ 20} The parties have agreed that defendant will no longer be obligated to maintain the children on his health insurance. It was further agreed that the children will be maintained on plaintiff's current husband's insurance through his employment.

{¶ 21} Plaintiff allows the parties' daughter, Jamie, to live rent-free in the former marital residence, which plaintiff retained. The fair rental value is $440 per month.

{¶ 22} It was not shown that defendant's actions causing his termination were motivated by ill will towards plaintiff and his children. Due to defendant's reduction in income, defendant has had to use retirement funds to pay current mortgage and car payments.

{¶ 23} Defendant has only limited companionship with his children because of their deteriorating relationship.

{¶ 24} It is therefore recommended:

{¶ 25} R.C. 3119.01 provides that income for child-support purposes consist of the sum of the gross income of the parent and any "potential income" of the parent if voluntarily underemployed.

{¶ 26} Potential income includes imputed income. The factors to determine whether a parent should be imputed income are set forth in R.C. 3119.01(C)(11)(a).

{¶ 27} The primary design and purpose of R.C. 3119.01 are to protect and ensure the best interests of children. *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496.

{¶ 28} A parent's subjective motivations for being voluntarily underemployed or unemployed play no part in the determination whether potential income is to be imputed to that parent in calculating the child-support obligation. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218.

{¶ 29} Although motivated by religious conviction, defendant's decision not to work on Sundays was an intentional act.

{¶ 30} Defendant is voluntarily underemployed pursuant to R.C. 3119.01(C)(11).

{¶ 31} Other decisions that are concerned with the question of voluntary income reduction to comply with religious obligations include *Dunn v. Dunn* (1981), 105 Mich.App. 793, 307 N.W.2d 424; and *McKeever v. McKeever* (1978), 36 Ore.App. 19, 583 P.2d 30. In *Dunn,* the court ruled that where the father had taken a vow of poverty upon joining a religious order and was clearly acting in good faith and not in a willful disregard of the interests of his children, the

amount of child support he is required to pay should be based on his actual income and not upon his potential income. By contrast, in *McKeever*, where the father voluntarily retired from his employment in order to take a nonpaying job with a Christian evangelical organization, the court held that, although the father may have made his decision in good faith, that cannot prevail over his paramount obligation to support his dependents. *McKeever* cited *State v. Sprague* (1976), 25 Ore.App. 621, 550 P.2d 769.

{¶ 32} In *Sprague*, the father was charged with criminal nonsupport. The court rejected the father's argument that the child-support provision of a decree infringes upon his constitutionally guaranteed right to the free exercise of his religious beliefs. In *Pencovic v. Pencovic* (1955), 45 Cal.2d 97, 287 P.2d 501, the California Supreme Court held that a parent may not circumvent his obligation to support his children by voluntarily reducing or terminating his income. In *Pencovic*, the father was a spiritual leader of a communal religious society. The court held that support need not be based upon actual income but may be based solely upon ability to earn. Of note, in *Rohloff v. Rohloff* (1987), 161 Mich.App. 766, 411 N.W.2d 484, Justice Maher, who was part of the per curiam decision in *Dunn*, changed his position. In his concurring opinion in *Rohloff*, Justice Maher stated that a voluntary reduction in income, even without bad faith or a willful disregard of dependent children, may not justify a reduction in child support even if based on the laudable objective of entering religious service.

{¶ 33} Defendant is voluntarily underemployed. Defendant will be imputed a potential income based on his earnings as a Kroger's manager. Defendant will be imputed an annual income of $54,974.

{¶ 34} Plaintiff is voluntarily underemployed. Plaintiff voluntarily quit her position with Dr. Helmsworth, which she had held from 1993 through 1998. Her reasons for leaving reflect a personal choice. Plaintiff has since gone on to hold another job and is currently seeking work. Plaintiff will be imputed an income of $19,760 ($9.50 per hour × 40 hours × 52 weeks).

{¶ 35} By agreement of the parties, plaintiff's present husband will be required to maintain the children on his health insurance through his employment.

{¶ 36} Plaintiff's motion for modification of the allocation of the tax exemptions will be denied. Defendant will be entitled to claim the parties' two children as a tax exemption for tax year 2002 and all tax years thereafter.

{¶ 37} Defendant will pay to plaintiff the sum of $424.35 per month per child or $97.92 per week per child as and for child support effective June 17, 2002.

{¶ 38} Costs to be paid from the deposit. Any costs in excess will be divided equally by the parties.

{¶ 39} The above findings and recommendations of the magistrate are hereby submitted to this court.

Recommendations accordingly.