ROHLOFF v ROHLOFF

Docket No. 89655. Submitted February 11, 1987, at Grand Rapids. Decided July 21, 1987. Leave to appeal denied, 429 Mich —.

G. Anne Rohloff brought an action in the Branch Circuit Court against John L. Rohloff seeking a judgment of divorce. The trial court granted the judgment, granted custody of the parties' two minor children to plaintiff, and ordered defendant to pay $107 per week in child support until the minor daughter reached eighteen years of age, at which time the child support would be reduced to $64 per week until the minor son reached eighteen years of age. Plaintiff thereafter filed a petition for a modification of the judgment of divorce requesting that custody of the minor daughter be transferred to defendant and that custody of the minor son remain with plaintiff, but that plaintiff be allowed to remove her son from Michigan to Indiana, where plaintiff had secured employment. The trial court subsequently issued an order awarding defendant custody of the minor daughter and allowing plaintiff to continue custody of the minor son and to remove his residence to Indiana. Defendant's child support obligation was modified to $19.50 per week. Defendant then filed a petition for modification requesting that legal custody of the minor son be transferred to defendant and that plaintiff be obligated to pay child support for both minor children. The trial court, Michael H. Cherry, J., entered an order granting defendant physical custody of his minor son and requiring plaintiff to pay child support of $59 per week. Although plaintiff had remarried and voluntarily quit her employment, the trial court based its award of child support on

REFERENCES

Am Jur 2d, Divorce and Separation §§ 710 et seq., 847, 1078 et seq.

Divorce: power of court to modify decree for support of child which was based on agreement of parties. 61 ALR3d 657.

Change in financial condition or needs of parents or children as grounds for modification of decree for child support payments. 89 ALR2d 7.

Change in financial condition or needs of husband or wife as ground for modification of decree for alimony or maintenance. 18 ALR2d 10.

the salary plaintiff had received prior to leaving her employment. Plaintiff appealed.

The Court of Appeals *held:*

1. Defendant did meet his burden of showing a change in circumstances to justify the awarding of child support. The fact that there was a change of physical custody of the children from plaintiff to defendant constitutes a change in circumstances.

2. The trial court did not abuse its discretion in basing the child support award on plaintiff's ability to earn, rather than her actual income. A party's motivation in voluntarily reducing his or her income is an appropriate factor for the trial court to consider in determining a party's ability to pay child support. The Court of Appeals, however, noted its belief that the use of a "bad faith test" should not be viewed as being dispositive.

3. The trial court did not abuse its discretion in utilizing the friend of the court guidelines, which had not yet been adopted, as a tool in determining the appropriate level of child support.

Affirmed.

R. M. MAHER, P.J., concurred and noted that he has changed his position since *Dunn v Dunn,* 105 Mich App 793 (1981), was decided. He now believes that a voluntary reduction in income, even without bad faith or a willful disregard for the interests of the dependent children, may not justify a reduction in child support.

1. DIVORCE — CHILD SUPPORT — MODIFICATION OF SUPPORT ORDERS.

There must be a change in circumstances to justify a modification of a child support award; a change of physical custody of the parties' children from one of the parties to the other constitutes a change in circumstances (MCL 552.17; MSA 25.97).

2. DIVORCE — CHILD SUPPORT — EFFORTS TO FIND EMPLOYMENT.

A party's efforts, or lack of efforts, to become gainfully employed are appropriate criteria to consider in determining if that party has the ability to meet a support obligation.

3. DIVORCE — CHILD SUPPORT — VOLUNTARY REDUCTION OF INCOME.

A party's motivation in voluntarily reducing his or her income is an appropriate factor for a trial court to consider in determining that party's ability to meet a child support obligation, however, the use of a "bad faith test" should not be dispositive of the question of whether a voluntary reduction in income warrants a reduction in a support obligation.

4. DIVORCE — CHILD SUPPORT — UNEXERCISED ABILITY TO EARN.

A trial court does not abuse its discretion by entering a child

support order based upon a party's unexercised ability to earn
where the party voluntarily reduces or eliminates his or her
income and the trial court concludes that the party has the
ability to earn an income and pay child support.

*Marks, Svendsen, Bird & Wilson* (by *Roger A.
Bird*), for plaintiff.

Before: R. M. Maher, P.J., and Sawyer and R. L.
Tahvonen,* JJ.

Sawyer, J. On December 12, 1983, the trial
court entered a judgment of divorce granting cus-
tody of the parties' two minor children, Stacy and
Jeffrey, to plaintiff and requiring defendant to pay
$107 per week in child support until Stacy reached
eighteen years of age, at which time the child
support would be reduced to $64 per week until
Jeffrey reached eighteen years of age. The parties
also had a third child, Darleen, who had reached
the age of majority by the time of the divorce. On
July 23, 1984, plaintiff filed a petition for a modifi-
cation of the judgment of divorce requesting that
custody of Stacy be transferred to defendant and
that custody of Jeffrey remain with plaintiff, but
that plaintiff be allowed to remove Jeffrey from
Michigan to Indiana, where plaintiff had secured
employment. The trial court subsequently issued
an order awarding defendant custody of Stacy,
allowing plaintiff to continue custody of Jeffrey
and to remove his residence to Indiana. Defen-
dant's child support obligation was modified to
$19.50 per week.

On June 14, 1985, defendant filed a petition for
modification requesting that legal custody of Jef-
frey be transferred to defendant and that plaintiff
be obligated to pay child support for both Stacy
and Jeffrey. Following a report of the friend of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

court and a hearing, the trial court entered an
order granting defendant physical custody of Jeffrey and requiring plaintiff to pay child support in
the amount of $59 per week. Although plaintiff
had remarried and voluntarily quit her employment, the trial court based its award of child
support on the salary plaintiff had received prior
to leaving her employment. Plaintiff now appeals
and we affirm.

Plaintiff first argues that defendant failed to
meet his burden of showing a change in circumstances to justify the awarding of child support.
We disagree. Plaintiff is correct that there must be
a change in circumstances to justify a modification
of the child support award. MCL 552.17; MSA
25.97. However, the fact that there was a change
of physical custody of the children from plaintiff to
defendant constitutes a change in circumstances.

Plaintiff's next argument is that the trial court
abused its discretion in basing the child support
award on plaintiff's ability to earn, rather than
her actual income. Again, we disagree. Plaintiff
calls upon us to once again revisit an area which
has troubled this Court in the past, namely the
effect of a noncustodial parent's voluntary reduction in income on that parent's child support
obligation. Although we have closely reviewed decisions of both this Court and the Supreme Court
covering almost two decades, we believe that our
analysis can begin with the particularly astute
observation of the trial court in the case at bar
that "however laudable her reasons now for not
working, attempting to make stronger the marriage relationship she recently has entered into
with Mr. Marks, that there regardless is a need for
support to be paid to Mr. Rohloff." In the case at
bar, plaintiff relies upon *Dunn v Dunn,* 105 Mich
App 793; 307 NW2d 424 (1981). However, before

considering the *Dunn* decision, we believe it help-
ful to look back further in this Court's decisions
and begin with consideration of the case of *Travis
v Travis,* 19 Mich App 128; 172 NW2d 491 (1969),
wherein this Court held that the duty of child
support is not limited to income, but that the court
must also take into consideration the ability to
work and earn money. In *Travis,* the Court con-
cluded that the trial court properly considered the
appellant's assets and income *potential,* noting
that the appellant "has been content with a part-
time job although he advances no reason why he
cannot work a forty-hour week." *Id.* at 130.

Similarly, in *Heilman v Heilman,* 95 Mich App
728; 291 NW2d 183 (1980), this Court, citing *Tra-
vis,* stated that the trial court could properly take
into consideration the parent's ability to work and
earn money and make an appropriate award. The
*Heilman* Court concluded that, while the trial
court could consider earning potential and place a
lien against a possible tort recovery to pay a child
support obligation, no child support obligation
should have been imposed upon the defendant
during the period when he had no earning capac-
ity and no assets, namely time that he spent
incarcerated in prison. *Heilman, supra* at 733.

A similar question was presented to both this
Court and the Supreme Court in a series of cases
which came by way of a review of a contempt-of-
court citation for failure to pay a court-imposed
child support obligation. In *Sword v Sword,* 399
Mich 367; 249 NW2d 88 (1976), the Court held
that, before citing a party for contempt for failure
to obey a support order, the trial court must
inquire into the party's ability to pay support and
comply with the support order. While the Court
was remorseful in its inability to provide precise
guidelines for trial courts to employ in such situa-

tions, it did offer a number of factors which could be considered prior to making a finding of contempt. *Id.* at 378. Among those factors given by the Court were the party's employment history, "including reasons for any termination of employment," "[w]ork opportunities available," "[d]iligence employed in trying to find work," and "[a]vailability for work." *Id.* at 378-379. While the *Sword* Court did not directly face the question of the effect of voluntary unemployment on the child support obligation, the Court's criteria clearly indicate that a party's efforts, or lack of efforts, to become gainfully employed are appropriate criteria to consider in determining if a party has the ability to meet a support obligation.

Also in the line of cases arising from contempt orders is *Cullimore v Laureto,* 66 Mich App 463; 239 NW2d 409 (1976). In *Cullimore,* the trial court cited the defendant for contempt after concluding that he had failed to exercise the diligence which would have provided him with the ability to satisfy his support arrearage obligation. In affirming the trial court, this Court noted that the record supported the conclusion that the defendant "comfortably accepts his unemployed status." *Id.* at 466. After noting that defendant had a self-proclaimed ability as a mechanic and a seven-year record of nonpayment, this Court concluded that it was "difficult to dispute the judge's finding that he was able but unwilling to assume his support obligations." *Id.* at 466.

In *Causley v LaFreniere,* 78 Mich App 250; 259 NW2d 445 (1977), this Court affirmed a lower court order which, while not citing the defendant for contempt of court because of his unemployed status, ordered defendant to pay $5 per month in child support during his period of unemployment and, after regaining employment, to resume pay-

ments of $10 per week child support and an additional $5 per week to be applied to the accumulated arrearage. The trial court additionally ordered that a child support arrearage of $10 per week would be accumulated during the period of unemployment. This Court affirmed the trial court, noting "defendant had twenty-odd work days available each month in which to seek whatever employment would be necessary to earn $5." *Id.* at 253. The Court also noted that defendant could satisfy that obligation without endangering the receipt of his ADC-U benefits. See also *Gonzalez v Gonzalez,* 121 Mich App 289; 328 NW2d 365 (1982), which applied *Causley.*

We now consider the limited number of cases, including *Dunn, supra,* which seem to support plaintiff's position. Prior to *Dunn,* this Court decided two other cases which considered the "bad faith" requirement that *Dunn* applied and plaintiff seeks to have applied in this case. In *Moncada v Moncada,* 81 Mich App 26; 264 NW2d 104 (1978), this Court considered a case where the defendant voluntarily left a job, thus voluntarily reducing his income. This Court concluded that voluntary reductions in income, if made in bad faith, will not warrant a modification of support payments. *Id.* at 30-31. Similarly, the Court concluded that no reduction in child support payments is warranted where the party voluntarily worsens his financial position through unconscionable disregard for the welfare of his children. *Id.* at 31. However, the Court also ruled that, absent bad faith or wilful disregard for the children's interest, a voluntary reduction of income is not an adequate reason for a refusal to modify a support order. *Id.*

Thereafter, this Court followed this ruling in *Rutledge v Rutledge,* 96 Mich App 621; 293 NW2d 651 (1980). In *Rutledge,* the defendant was an

attorney who was employed at an annual salary of $24,000 who, thereafter, left his employment to enter private practice, whereupon his gross income dropped to approximately $2,500. This Court, applying the "bad faith test" adopted in *Moncada,* ruled that an individual should be allowed to make good faith changes in his employment and that his child would share in the financial inconvenience or hardship resulting from that change. *Rutledge, supra* at 625.

Finally, we turn to *Dunn,* the case relied upon by plaintiff. In *Dunn,* the plaintiff joined a religious order which required him to take a vow of poverty. As a result, the plaintiff's income was substantially reduced. This Court applied the bad-faith test and, concluding that the plaintiff had entered the ministry in good faith, ruled that his child support obligation should accordingly be adjusted downward and be based upon his actual income, rather than his potential income.

Since *Dunn,* this Court has again addressed the question of voluntary reduction in income, but it is not entirely clear whether the subsequent panels have chosen to follow the bad-faith test first enunciated in *Moncada.* In *Wilkins v Wilkins,* 149 Mich App 779, 792; 386 NW2d 677 (1986), Judge BRENNAN cited *Dunn* for the proposition that the trial court is not limited to consideration of the parent's actual income, but may also look to the parent's unexercised ability to earn. The *Wilkins* opinion was relied upon by Judge KELLY in *Joslin v LaVance,* 154 Mich App 501, 503-504; 398 NW2d 453 (1986), for the proposition that a trial court is not limited to a parent's actual income, but may consider the unexercised ability to earn. In *Joslin,* the plaintiff requested a reduction in his child support obligation and, at that time, was earning approximately $50 per week as a self-employed woodcut-

ter. The Court noted that the plaintiff was mentally and physically healthy and offered no reason why he was unable to obtain full-time or additional part-time employment. Therefore, the Court concluded that the trial court did not abuse its discretion in setting child support payments at $21 per week. The Court did, however, conclude that it was inappropriate to require the plaintiff to accumulate child support arrearages for a period of time that he had physical custody of other children not at issue in that case.[1]

We recognize the difficulty facing both trial courts and the appellate courts in those cases where a noncustodial parent makes an employment choice which reduces his or her income, thus necessitating either a reduction in the child support obligation or imposition of a child support obligation representing a high, perhaps confiscatory, percentage of the parent's income. On the one hand, the courts must not unduly interfere with the personal lives and career choices of individuals merely because they have been involved in a divorce. On the other hand, because there has been a divorce, the courts are thrust into the middle of the parties' personal lives in order to protect the interests of the minor children who are also unwilling participants in the divorce. Unfortunately, our extensive review of the case law considering those situations in which there has been a voluntary reduction in income has not lessened the burden of our task in the instant case. On the one hand, as found by the trial court, plaintiff left

---

[1] However, in *Joslin*, Judge GILLIS concurred in part and dissented in part, agreeing that the trial court did not abuse its discretion in refusing to reduce the child support obligation, but Judge GILLIS would not eliminate the arrearage, finding that *Causley, supra,* and *Gonzalez, supra,* were dispositive. Judge GILLIS noted that the plaintiff in *Joslin* was able to be employed and earn the minimal amount necessary to support his child.

the job market in good faith and for the arguably laudable goal of strengthening her newly entered into marriage. On the other hand, we do not believe that plaintiff is entirely free to make financial decisions which are allegedly in the best interest of her new family, but which abrogate her responsibilities to the preexisting family. It would be inequitable to allow the children of her first marriage to suffer merely so that her second marriage can purportedly prosper.[2]

While we share the Supreme Court's ambition in *Sword, supra,* to provide trial courts with guidance in determining a party's "ability to pay" child support, we also share the Supreme Court's inability to define that term with any degree of precision. Rather, we can only refer to those criteria which the *Sword* Court articulated, noting that the list it provided is not exhaustive. While we believe that a party's motivation in voluntarily reducing his or her income is an appropriate factor for the trial court to consider in determining a party's ability to pay, to the extent that *Moncada* and its progeny mandated the use of a "bad faith test" as being dispositive, we must disagree with those cases. While we do not necessarily disagree with the result reached in *Moncada, Rutledge* and *Dunn,* we do not necessarily agree with the reasoning of those cases either. Rather, we conclude that, where a party voluntarily reduces his or her

---

[2] We note in passing that plaintiff offered no testimony in the trial court that the well-being of her marriage necessitated her unemployment. Not only is the record devoid of any evidence that her new husband was of the philosophy that a woman's place was in the home or of any psychological testimony that their marriage required a full-time housewife, there was testimony by plaintiff that she speculated that she would be returning to the job market within a few years. While we accept the trial court's conclusion that plaintiff chose to leave the employment world in good faith, we are not at all impressed with her unsupported claim that the necessity of plaintiff's working in order to provide child support for her children would unduly harm her new marriage.

income, or, as in this case, voluntarily eliminates his or her income, and the trial court concludes that the party has the ability to earn an income and pay child support, we do not believe that the trial court abuses its discretion by entering a support order based upon the unexercised ability to earn. Accordingly, we affirm the trial court's exercise of its discretion in the case at bar by entering a child support order based upon the income plaintiff received before voluntarily leaving her employment. Nothing in the case presented by plaintiff, other than her own desire not to do so, suggests that she is unable to comply with that order.

Plaintiff's final argument is that the trial court erred in considering the friend of the court guidelines which had not yet been adopted. We note that the trial court did not treat those guidelines as dispositive. Rather, the trial court merely found that those guidelines were helpful and noted the extreme likelihood of those guidelines being adopted in the near future. We cannot conclude that the trial court abused its discretion in utilizing those guidelines as a tool in determining the appropriate level of child support.

The decision of the trial court is affirmed. Costs to defendant.

R. L. TAHVONEN, J., concurred.

R. M. MAHER, P.J. *(concurring).* I write separately to acknowledge that I have changed my position since *Dunn v Dunn,* 105 Mich App 793; 307 NW2d 424 (1981). The intervening six years and the succession of cases brought through the courts have convinced me that a voluntary reduction in income, even without bad faith or a willful disregard for the interests of the dependent chil-

dren, may not justify a reduction in child support. While it may be laudable for an individual to enter religious service under a vow of poverty or to undertake the full time care of her stepchildren, the parent of a minor child has a preexisting duty which must be fulfilled. Responsibility is not egocentric. Charity begins not simply at the home in which a party may hang her hat, but in the home of the party's lawful dependents. Many promises are fulfilled by parenthood, but many options are foreclosed. Among them, for this plaintiff, is the option to devote her energies entirely to the children of another. The decision of the trial court was equitable and just. I would therefore affirm.