30 Kan. App.2d 651 (2002)
45 P.3d 398
In the Matter of the Marriage of LEAH J. STEVENS McCOLLUM, now LEAH J. WAAGE, Appellee, and
WILLIAM B. McCOLLUM, Appellant.
No. 87,450.
Court of Appeals of Kansas.
Opinion filed May 3, 2002.
John C. Tillotson, of Murray, Tillotson, Nelson & Wiley, Chartered, of Leavenworth, for appellant.
Robert D. Beall, of Davis, Beall, McGuire & Thompson, L.L.C., of Leavenworth, for appellee.
Before GERNON, P.J., GREEN and JOHNSON, JJ.
*652 GERNON, J.:
William B. McCollum appeals the district court's modification of child support.
William and Leah J. Stevens McCollum, both doctors, were married in 1982, had three children together, and were divorced in 1999. William was awarded custody of the three children. Leah was ordered to pay $1,694 per month in child support. In 2001, the child support was lowered to $481 per month.
The apparent basis for the reduction in child support payments was Leah's impending move to Norway. She had recently married a Norwegian military officer who had been attending the Command and General Staff College at Fort Leavenworth and was returning to Norway. Leah would not be able to practice medicine in Norway for about 20 months until she took a course in Norwegian, passed a proficiency examination, completed a medical course, and passed an examination based on the medical course.
William appeals the reduction in child support. We reverse.
The trial court's determination of child support will be upheld unless an abuse of discretion occurred. See In re Marriage of Scott, 263 Kan. 638, 645, 952 P.2d 1318 (1998). Judicial discretion is abused only when no reasonable person would hold the view adopted by the district court. However, an interpretation of the Kansas Child Support Guidelines (Guidelines) is a question of law providing the appellate court with unlimited review. In re Marriage of Hoffman, 28 Kan. App.2d 156, 158, 12 P.3d 905 (2000), rev. denied 270 Kan. 898 (2001).
William argues it was plain error for the district court not to properly interpret the Guidelines concerning imputing income. Leah contends the district court accurately followed the dictates of the Guidelines.
The relevant section of the Guidelines provides:
"1. Income may be imputed to the noncustodial parent in appropriate circumstances including the following:
....
b. When a parent is deliberately unemployed, although capable of working full time, employment potential and probable earnings may be based on the parent's recent work history, occupational skills, and the prevailing job opportunities in the community." Kansas Child Support Guidelines, Supreme Court Administrative Order No. 128 § II.E.1.b (2001 Kan. Ct. R. Annot. 99).
*653 The district court ruled:
"Well, this is a unique situation. This family was a family that had asubstantial assets and substantial interests. Seeing how the children that are involved had some considerable activities that were beyond ordinary expenses that I usually and traditionally hear about in this courtroom, so there are [sic] a lot of uniqueness to this.
"There's a lot of assets out there still remaining even after this divorce. There's been remarriages since this divorce, so to use real traditional factors becomes, I think, a stretch when you consider the uniqueness of this family, but looking at the [child support] worksheet I have in front of me now, I find that she's currently unemployed, I impute minimum wage of 893 per month. He's at 10,000. I come up with $10,893 gross income for the parties. His share's 92 percent and her share is 8 percent.
"At the 10,800 a month family, that's 960 for 1 child, 1,104 for the other child for a total child support obligation of 2,064. Her 8 percent share would be 165.
"I will consider the fact that she would make one trip back to the United States to visit the children and it will cost a hundred dollars per month, so I will subtract a hundred. I don't think it's unreasonable to expect her to withdraw 5,000 a year for the support of her child from her accounts, so that adds 416 so I come up with a total obligation of 481 per month. The court will make it effective July 1 [2001]."
According to 2 Elrod & Buchele, Kansas Family Law § 14.2 (1999), there are two schools of thought on how a district court should rule when a parent changes from a higher paying job to a lower paying one. If the change is to further career or personal goals and not to avoid paying child support, courts generally do not think it proper to intervene in career decisions. However, the needs of the children involved must be protected by the court. Elrod and Buchele cite two cases (one from Arkansas and one from Michigan) that indicate a parent should not "assume new responsibilities or establish a new business which takes precedence over existing responsibilities to dependents and [courts] may impute income based on earning capacity." Kansas Family Law § 14.2, p. 356.
In the Arkansas case, the Arkansas Supreme Court remanded the case for a better determination of why the former husband left his staff attorney position with the Department of Corrections to open a not very lucrative solo law practice. Grady v. Grady, 295 Ark. 94, 98-99, 747 S.W.2d 77 (1988). The court stated that there might be situations in which income reductions like that suffered *654 by the former husband were reasonable and justifiable. On the other hand, the court also noted that parents do not have free reign over decisions which affect minor children involved in a divorce. Ultimately, the lower court failed to make any findings about why the father left his former position. A remand was then ordered. 295 Ark. at 98-99.
In the Michigan case, the former wife quit her job voluntarily when she remarried for the stated reason of wanting her new marriage to be stronger. Rohloff v. Rohloff, 161 Mich. App. 766, 769, 411 N.W.2d 484 (1987). The district court based its child support award on the amount of money the mother had been receiving prior to quitting her job. The court stated that it believed the mother was not "entirely free to make financial decisions which are allegedly in the best interest of her new family, but which abrogate her responsibilities to the preexisting family." 161 Mich. App. at 775. The court held that when a parent voluntarily reduces or eliminates his or her income and the trial court concludes the parent can work and pay child support, there has not been an abuse of discretion if a support order is entered that is based on the parent's ability to earn. 161 Mich. App. at 775-76.
Here, the district court found Leah to be unemployed. Given that she was unemployed voluntarily, i.e., deliberately, the district court could consider her recent work history, skills, and community job opportunities in arriving at the child support award. The trial court imputed minimum wage to Leah.
As indicated on the domestic relations affidavit filed during her divorce proceedings, Leah's income for 2000 was $120,000. Leah had been certified as a family physician three times. In the spirit of Rohloff, Leah should not be able to abrogate her responsibilities to her family by moving to Norway. Although there was no testimony that Leah was moving to Norway to evade child support, her voluntary relinquishment of her medical license and voluntary decision to move to Norway should not mean her child support obligation is slashed from $1,694 per month to $481 per month.
Leah no longer has a medical license in Kansas. However, it is not unreasonable to think a person with her skills and degrees *655 could obtain some form of employmenteither in Kansas or in Norwaythat would pay more than the minimum wage.
Paying her original child support obligation would not be a hardship to Leah. As she testified, she has a life insurance policy valued at $87,819, $1,100,000 in an IRA account, non-IRA investments of $105,000, and cash totaling $7,000. In addition, Leah anticipated receiving about $29,000 in cash proceeds from the forthcoming sale of her home. Without touching the life insurance or the IRA, Leah has available $134,000 to pay obligations. The amount she was ordered to pay was $1,694 per month. That amount, times the 20 months before she can obtain a medical license, totals $33,880, barely more than the anticipated proceeds from the sale of her house. Even this amount does not consider investment income or other earnings.
Given Leah's work history and medical degree, the district court erred by imputing minimum wage to lower her child support payments.
Judge Beier, writing for this court, recently stated:
"The 40-hours passage simply has no applicability to a parent who has had a recent full-time salaried position at which he or she was sometimes required to work in excess of 40 hours per week. For that parent, the district court can impute income at the earlier salaried level, as long as that level does not run afoul of factors such as `employment potential ... occupational skills, and the prevailing job opportunities in the community.' Section II.E.I.b." In re Marriage of Hoffman, 28 Kan. App.2d at 159-60.
William also argues that the district court erred by assuming Leah would return to the United States to visit her children. The district court subtracted $100 a month from her obligation to her children. As William notes, the issue was not included in any motions or discussed at the hearing on child support modification.
The district court again erred by decreasing Leah's payments by the expense of a hypothetical trip. At one point, Leah had expressed an interest in having the children visit her in Norway. She decided, however, to postpone any decision about this until her children vocalized a desire to visit her. Nowhere, however, does the record indicate that Leah will be traveling to the United States to visit her children once a year. Further, the record is void of any *656 indication of how the district court arrived at its calculation that the trip would cost $1,200.
The district court erred in its application of the Guidelines concerning imputing income to Leah when it modified the child support award. We conclude that the original child support order should be restored and, without evidence and a record of any discussion regarding travel expenses or offsets, that part of the order is reversed.
Reversed and remanded with directions to reinstate the child support of $1,694 per month.